**James K. MALINAK, Appellant,**

**v.**

**FIRESTONE TIRE & RUBBER COMPANY et al., Appellees.**

**No. 15401.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Dec. 30, 1968.

Rehearing Denied Jan. 23, 1969.

Steelman, Bray & Spradlin, J. Monty Bray, Houston, for appellant. W. James Kronzer, Houston, amicus curiae.

Robert J. Malinak, Philip J. John, Jr., Baker, Botts, Shepherd & Coates, Houston, of counsel, for appellee The Firestone Tire & Rubber Company.

Butler, Binion, Rice, Cook & Knapp, Steven C. Oaks, Richard M. DeGuerin, Houston, for appellee Luke Sanders Texaco Service Station.

COLEMAN, Justice.

This is a products liability case. At the conclusion of appellant's evidence on the issue of liability, the trial court withdrew the case from the jury and rendered a judgment for appellees.

The accident and resulting damage were caused by the failure of a new tire. There was evidence that the tire failure resulted from a separation of the bead from the body of the tire. There was evidence that after the tire was mounted on appellant's automobile by Luke Sanders and his employee at Luke Sanders Texaco Service

Station, an appellee, the tire was not misused or abused. There was evidence that the defect was probably caused either during the manufacturing process before it left the possession of the Firestone Tire & Rubber Company, an appellee, or else during the process of mounting the tire on the rim by Luke Sanders Texaco Service Station.

There are two basic questions presented by this record. First it must be determined whether the sale to appellant was made by Luke Sanders Texaco Service Station (referred to henceforth as Luke Sanders) or by Firestone Tire & Rubber Company (referred to henceforth as Firestone). If it be determined that the sale was made by Luke Sanders, the question arises as to whether under "strict liability" Firestone is responsible even though the defect was caused during the process of mounting the tire by Luke Sanders.

Appellant regularly traded with Luke Sanders "because he gave good service and I was real happy with it." He had been to Luke Sanders on many occasions for service to his automobile prior to the accident. When he decided to buy some new tires he went in to Mr. Sanders and asked Sanders for four Firestone 500 tires and he didn't have them. Mr. Sanders volunteered to call down to the Firestone Retail Store to see if they had the tires. He called and got the price on the tires. About a week later appellant returned to Luke Sanders and Sanders called the Firestone Retail Store and told them he would have someone pick them up and to set them aside and that he would pay for them at that time. As an accommodation to appellant and to make the procedure faster, it was agreed that appellant would leave his car at the service station so that Sanders could be removing the used tires while appellant took Sanders' truck and picked up the new tires. Appellant entered the Firestone Retail Store and told an employee that he wanted to pick up some tires for Luke Sanders. The tires, which had been set aside, were delivered to him and he paid for them with his own funds.

Luke Sanders arranged for the purchase of the tires because he would receive a dealer's discount on the purchase price. He gave appellant the benefit of a *portion* of this discount. Appellant returned to the service station and remained there while the tires were mounted and balanced. The station was equipped with a tire balancing machine. Appellant paid Luke Sanders for this work. Appellant testified that he got the defective tire "from Luke Sanders' Texaco, and it was purchased from Firestone on Rusk." They were wrapped when he picked them up at the Firestone Retail Store and when he delivered them to Luke Sanders.

■ It is a matter of common knowledge that service stations selling the products of major oil companies usually sell automobile tires. Here appellant, who had been in the station many times, went there for the purpose of purchasing automobile tires. The station was equipped with the necessary tools and appliances for mounting and balancing tires. The station received a *dealer's discount* from the Firestone Store. While there is no direct testimony that Luke Sanders was a dealer in tires, the evidence was sufficient to support a finding that he was such a dealer.

■ The evidence was also sufficient to support a finding that Luke Sanders sold the tire in question to appellant. Appellant ordered tires from Luke Sanders who ordered them from the Firestone Store. Firestone Store delivered the tires to appellant under the impression that he was the agent for Luke Sanders. The testimony supports the conclusion that appellant was Luke Sanders' agent for the purpose of accepting delivery of the tires. Appellant testified that he received the benefit of only a portion of Luke Sanders' dealer's discount. The transaction was essentially commercial in that by reason of appellant's purchase Luke Sanders received compensa-

tion for mounting the tires and balancing two of them. McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.1967); Barth v. B. F. Goodrich Co., 265 A.C.A. 253, 71 Cal.Rptr. 306 (1968).

In commenting on the Barth case in his brief, the attorney for Luke Sanders says:

"The California Court decided that the definition of a sale or of a seller for the purpose of the doctrine of strict liability differs with the general definition of a sale or seller as applicable to the law of contracts. It states that neither the transfer of title to the goods nor a sale is required and with this statement appellee has no quarrel. The Court continues, however, to say the Restatement of Torts, second edition, Section 402a, adopted and approved in Texas in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, (Tex.1967), correctly states the law in that the seller must be engaged in the business of selling a product such as the one of which complaint is made."

■ As has been previously pointed out, Luke Sanders was engaged in the automobile service station business, which included the sale of tires. There is evidence that the tire was defective when he delivered it to appellant. The trial court erred in rendering judgment for appellee, Luke Sanders Texaco Service Station. McKisson v. Sales Affiliates, Inc., supra; Beck v. Royal Crown Bottling Company, 433 S.W.2d 764 (Court of Civil Appeals, 1st Dist., 1968).

■ In accordance with the general rule in order for appellant to have raised a fact issue against Firestone under the theory of strict liability, appellant must have produced evidence of probative force that the tire was defective when it left the hands of Firestone. Jack Roach-Bissonnet, Inc. v. Puskar, 417 S.W.2d 262 (Tex.1967); Coca Cola Bottling Company of Houston v. Hobart, 423 S.W.2d 118 (Houston Civ. App., 14th Dist., 1968, error ref., n. r. e.).

■ In the case last cited the question was discussed in detail. The court reached the conclusion that before the manufacturer could be held liable under the "strict liability" rule, the defect and unreasonable danger to the consumer must be traced to it. Since the tire was delivered to appellant and by him to Luke Sanders wrapped, the defective condition is traced to Firestone unless the defect was caused during the course of mounting the tire. The expert testimony relied on by appellant was that the defect was either caused by a failure in the manufacturing process or during the installation of the tire on the rim. The probabilities were equal. The evidence is not sufficient to trace the defect in the tire to Firestone.

In his brief appellant agrees that he has the burden to bring forth evidence establishing that the defect existed at the time the business entity sought to be charged surrendered possession and control to either the injured party "or some intermediary." It is urged in the brief of amicus curiae that the manufacturer or sponsor has a responsibility for defects that could reasonably be contemplated to occur in the handling of the product prior to consumer use. In support of this proposition these cases are cited: McKisson v. Sales Affiliates, Inc., supra; Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964); Sharp v. Chrysler Motors, Tex.Civ.App., 432 S.W.2d 131 (Houston Civ.App., 14th Dist., 1968, writ pending); and Barth v. B. F. Goodrich Tire Co., supra.

It is argued that Firestone anticipated that the dealer, Luke Sanders, would mount the tire, since he had established a "dealer's discount" with Firestone and had ordered the tires. The tires were delivered to a Luke Sanders nominee, who was driving a Luke Sanders truck. It is urged that the mismounting of the tires, if that in fact occurred, is a dependent cause in a "strict liability" case where it can be reasonably anticipated by the manufacturer that a dealer or another conduit is going to

be required to do something further to make the product useable by the consumer.

The case most clearly in point appears to be Vandermark v. Ford Motor Company, supra (cited with approval by the Supreme Court of Texas in McKisson v. Sales Affiliates, Inc.), wherein the court said:

"Ford contends, however, that it may not be held liable for negligence in manufacturing the car or strictly liable in tort for placing it on the market without proof that the car was defective when Ford relinquished control over it. Ford points out that in this case the car passed through two other authorized Ford dealers before it was sold to Maywood Bell and that Maywood Bell removed the power steering unit before selling the car to Vandermark.

"In Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 62, 27 Cal.Rptr. 697, 700, 377 P.2d 897, 900, [13 A.L.R.3d 1049] we held that 'A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.' Since the liability is strict it encompasses defects regardless of their source, and therefore a manufacturer of a completed product cannot escape liability by tracing the defect to a component part supplied by another. (Goldberg v. Kollman Instrument Corp., 12 N.Y.2d 432, 437, 240 N.Y.S.2d 592, 191 N.E.2d 81.) Moreover, even before such strict liability was recognized, the manufacturer of a completed product was subject to vicarious liability for the negligence of his suppliers or subcontractors that resulted in defects in the completed product. (Dow v. Holly Manufacturing Co., 49 Cal.2d 720, 726–727, 321 P.2d 736; Ford Motor Co. v. Mathis, 5 Cir., 322 F.2d 267, 273, [3 A.L.R.3d 1002]; Boeing Airplane Co. v. Brown, 9 Cir., 291 F.2d 310, 313; see Rest., Torts, § 400.) These rules focus responsibility for defects, whether negligently or non-

negligently caused, on the manufacturer of the completed product, and they apply regardless of what part of the manufacturing process the manufacturer chooses to delegate to third parties. It appears in the present case that Ford delegates the final steps in that process to its authorized dealers. It does not deliver cars to its dealers that are ready to be driven away by the ultimate purchasers but *relies on its dealers to make the final inspections, corrections, and adjustments* necessary to make the cars ready for use. (emphasis ours) Since Ford, as the manufacturer of the completed product, cannot delegate its duty to have its cars delivered to the ultimate purchaser free from dangerous defects, it cannot escape liability on the ground that the defect in Vandermark's car may have been caused by something one of its authorized dealers did or failed to do."

■ The evidence produced by appellant in this case is not sufficient to raise more than a conjecture or suspicion that Luke Sanders was a dealer in *Firestone tires* or that he had a *regular* or *substantial* business connection with Firestone. It is not developed that the Firestone Retail Store was authorized by Firestone Tire & Rubber Company to establish dealerships, and the fact that it allowed Luke Sanders a dealer's discount, without explanation, is not sufficient to raise an issue as to whether by that action the Firestone Retail Store intended to constitute Luke Sanders a Firestone dealer. In the absence of evidence that Luke Sanders was authorized by the Firestone Tire & Rubber Company as a dealer in Firestone tires, it cannot be inferred that Firestone Tire & Rubber Company relied on Luke Sanders to properly mount the tires. Since the evidence is insufficient to raise an issue of fact as to whether the tire in question was defective when it left the possession of Firestone Tire & Rubber Company and the Firestone Retail Store, the trial court did not err in rendering judgment that appellant take nothing as against Firestone Tire & Rub-

ber Company and Firestone Stores Division of Firestone Tire & Rubber Company.

The cause of action against Luke Sanders Texaco Service Station is ordered severed and the judgment of the Trial Court insofar as it decrees that appellant take nothing against Luke Sanders Texaco Service Station is reversed and remanded to the Trial Court. One-half of the costs in this Court and in the Trial Court are adjudged against Luke Sanders Texaco Service Station. In all other respects the judgment of the Trial Court is affirmed.