HARRIS PACKAGING CORPORATION,
Appellant,

v.

BAKER CONCRETE CONSTRUCTION
COMPANY, Appellee.

No. 01–96–01169–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 30, 1998.

Rehearing Overruled June 29, 1998.

Brian Keith Davis, Haltom City, for Appellant.

Douglas T. Gosda, Houston, for Appellee.

Before HEDGES, NUCHIA and SMITH, JJ.*

## OPINION

NUCHIA, Justice.

After a bench trial, judgment was rendered against appellant based upon strict products liability, negligence, and breach of express and implied warranties. We reverse and render.

## BACKGROUND

The Texas Department of Criminal Justice (TDCJ) broke ground on a new psychiatric unit in Sugar Land in 1992. Appellee Baker Concrete Construction Company (Baker) was the concrete subcontractor on the project. An element of their job was to pour the "grade beams" which connect the piers of the building. Because of the shifting nature of the soil in southeast Texas, Baker decided to use a carton form in the pour. Concrete would be poured on top of this carton form, which would create a four inch gap between the concrete and the ground. After the concrete dries, the carton form eventually deteriorates, leaving a gap for the possible expansion of the ground.

Baker chose Burke, Texas d/b/a Sheplers (Sheplers) to provide and assemble the carton forms to provide the four inch gap for the job. Sheplers purchased unassembled forms from one of its carton forms vendors, appellant Harris Packaging Corporation (Harris). Harris purchased the cardboard-like material from Georgia Pacific and then cut and creased the material. Harris sells these forms assembled or unassembled. In this case, Sheplers opted to purchase the unassembled forms. The forms Sheplers ordered and received were a two-piece form. One piece was the body of the carton form, the other was a reinforcing sleeve that made the form more sturdy.

Sheplers did not use the sleeve when it assembled the forms for Baker. As a result, the forms did not support the concrete poured on them, and thus, did not maintain the proper four inch gap. One of the plumbers working on the job noticed that there was not a four inch gap under the concrete and notified Baker. Baker contacted both Sheplers and Harris and informed them that the forms had collapsed. To determine the cause of the collapse, Baker worked up a mock up of the grade beam pours. Harris provided assembled forms to Sheplers to use in the mock up. However, Baker refused to use these forms, because they had the sleeve properly assembled on the carton form. A new carton form was provided that was built consistent with what Sheplers had originally provided to Baker. These forms collapsed just as the original ones did.

Because of the delay, the general contractor informed Baker that they had to dig under the beams to create a full four inch gap per the specifications. The general contractor also informed Baker that if there was any additional delay, Baker would be required to pay liquidated damages. Baker immediately began creating the gap.

Baker and Sheplers also hired geotechnical engineers to perform a survey. Both reports found that notwithstanding the collapse, the gap was sufficient to provide for soil expansion. However, by the time the reports were completed, Baker was almost finished with the repairs. The only beams not repaired were those where there was a greater risk of damage if repaired.

To recover their repair costs, Baker sued Harris, the architects, and Sheplers based

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

upon strict products liability, express warranty, implied warranty of merchantability, implied warranty for a specific purpose, and negligence. The architects and Sheplers settled just before trial. After a bench trial, the trial court found for Baker on all theories.

## DISCUSSION

### Products Liability

In its first point of error, Harris contends that the trial court erred in granting judgment for Baker based on strict products liability, and overruling Harris's motions for directed verdict, motion for judgment pursuant to TEX.R. CIV. P. 301, motion to modify, correct, or reform the judgment, and motion for new trial. Harris argues the trial court erred because: (1) the carton forms were not unreasonably dangerous as designed; (2) Harris did not have a duty to warn Baker; (3) Baker did not own the grade beams; (4) the economic loss rule precludes the recovery of costs of repairs as damages in strict product liability; and (5) Harris did not "cause" harm to Baker.

■ Directed verdict is proper when: (1) a defect in an opponent's pleadings makes them insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence is insufficient to raise an issue of fact. *Kenneco Energy, Inc. v. Johnson & Higgins of Texas, Inc.*, 921 S.W.2d 254, 259 (Tex.App.—Houston [1st Dist.] 1995), *aff'd in relevant part*, 962 S.W.2d 507 (Tex.1998). Under a point of error questioning the denial of a motion for directed verdict, the appellant must show that the record contains evidence establishing the movant's position as a matter of law.

*Rivera v. Herndon Marine Products, Inc.*, 895 S.W.2d 430, 432 (Tex.App.—Corpus Christi 1995, writ denied); *Kershner v. State Bar of Tex.*, 879 S.W.2d 343, 346 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

■ The supreme court has held that a cause of action for strict liability in tort will not lie unless there is actual physical harm either to persons or to their property. *Lubbock Mfg. Co. v. Sames*, 598 S.W.2d 234, 236 (Tex.1980); *Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.*, 572 S.W.2d 308, 311 (Tex.1978); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 79 (Tex.1977).

■ Baker makes the novel argument that because it could have obtained a mechanic's lien on the property if it had not been paid,[1] it had an interest in the property, and could, therefore, recover under strict liability. Baker cites no authority for this broad proposition. It was error for the trial court to deny Harris's motion for directed verdict.[2] We sustain Harris's first point of error.

### Merchantability

In its fourth point of error, Harris contends that the trial court erred in granting judgment for Baker based upon a breach of the implied warranty of merchantability, and overruling Harris's motions for directed verdict, motion for judgment pursuant to TEX.R. CIV. P. 301, motion to modify, correct, or reform the judgment, and motion for new trial.

■ To be merchantable, goods delivered in a given line of trade must be of a quality comparable to that generally acceptable in that line of trade. TEX. BUS. & COMM. CODE ANN. § 2.314(b)(1), cmt. 2 (Vernon

---

1. It is also unclear whether Baker in fact could receive a mechanic's lien against the State of Texas.

2. We also note that even if the beams in question were Baker's property, Baker could still not recover. It is undisputed that there was not a problem with the beams, but instead, there was a reduction in the gap meant to protect the beams in case the ground swelled. The evidence also showed that notwithstanding that there was only a two inch gap in many places, even this was sufficient to protect the beams. Baker nonetheless corrected the gap due to the contract specifications. Baker also conceded at trial that it only experienced indirect economic damages from the increased labor cost of digging underneath the beams to increase the gap. Under RESTATEMENT (SECOND) OF TORTS § 402A, Baker is not entitled to recover these damages. *Nobility Homes*, 557 S.W.2d at 78 n. 1 (consequential economic losses include all indirect losses, such as the loss of profits resulting from an inability to make use of the defective product, and are unrecoverable in strict liability).

1994); *Chaq Oil Co. v. Gardner Mach. Corp.*, 500 S.W.2d 877, 878 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ). A plaintiff in an implied warranty of merchantability case must prove that the goods were defective when they left the manufacturer's possession. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex.1989); RESTATEMENT (SECOND) OF TORTS § 402A cmt g (1965); *see also Malinak v. Firestone Tire & Rubber Co.*, 436 S.W.2d 210, 213 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.) (plaintiff must produce evidence of probative force that product was defective when it left hands of manufacturer). Plaintiff must show that the goods were unfit for the ordinary purpose for which they are used because of a lack of something necessary for adequacy, *i.e.*, a defect. *Plas–Tex, Inc.*, 772 S.W.2d at 444.

Baker argues that the defect in this case was Harris's failure to have a warning on the carton that sleeves should be installed on forms in excess of 12 inches wide. Baker theorizes that if such a warning had been on the product, it would have indicated to it that Sheplers was negligent in not installing the sleeve.

■ It is undisputed that the form would have worked had the sleeve been installed. Harris sent the form and the sleeve to Sheplers, but Sheplers did not install the sleeve. Each witness testified that they had never seen a warning placed on a carton form by any other manufacturer. Baker produced no evidence that Harris's failure to provide a warning caused its product to fall below the quality generally acceptable in that trade. In this case, there was not a defect. *See Plas–Tex, Inc.*, 772 S.W.2d at 447 n. 3. Additionally, even assuming, *arguendo*, that the failure to construct the carton form with a sleeve could be considered a defect, that defect occurred after leaving the hands of the manufacturer, and strict liability is inapplicable as to Harris.[3] *See also* RESTATEMENT (SECOND) OF TORTS § 402A cmt p and q

(where substantial change occurs after leaving manufacturer, no liability). It was error for the trial court to render judgment for Baker on this ground. We sustain Harris's fourth point of error.

## Express Warranty

■ Appellant complains in point of error five, *inter alia*, that the trial court erred in granting judgment for Baker based upon express warranty, and overruling Harris's motions for directed verdict. The Uniform Commercial Code provides that an express warranty is created when "[a]ny affirmation of fact or promise [is] made by the seller to the buyer which relates to the goods and *becomes part of the basis of the bargain.*" TEX. BUS. & COM.CODE ANN. § 2.313(a)(1) (Vernon 1994) (emphasis added). "Basis of the bargain" imposes the reliance requirement into express warranty claims. *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex.1997). Express warranties only exist if express representations form the basis of the bargain. *General Supply & Equip. Co. v. Phillips*, 490 S.W.2d 913, 917 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.).

The only evidence offered on express warranty was by Smaltz, the Baker employee who had contact with Harris. Smaltz testified that he called Gerald Adams, an employee of Harris, after the forms had been purchased and delivered to the job site by Sheplers. Smaltz testified that he did not remember the exact details of the conversation. All he remembered was that he read some, but not all of the specifications, and asked Gerald Adams, the Harris employee, whether Harris forms would work. Smaltz testified that he did not remember exactly what Adams said in reply. Adams denies any conversation even occurred.

It is undisputed that the conversation occurred after the bargain was complete between Sheplers and Baker. Though there does not appear to be a case directly on point

---

**3.** Further, the "authorized dealer" exception does not apply in this case. This Court in *Malinak* explained that only where an intermediary is an authorized dealer of the manufacturer could a manufacturer still be held liable for the misassembly or errors of the intermediary. *Malinak*,

436 S.W.2d at 215. It is undisputed in this case that Shepler's was not an "authorized dealer," but was merely buying Harris carton forms and reselling them. Shepler's representatives testified that they also sold other manufacturer's carton forms.

with the facts of this case, White and Summers, in their renowned treatise on the Uniform Commercial Code, point out that these sort of statements made after the sale has been concluded are a source of reliance dispute. "One may argue most persuasively that once a legally binding contract of sale exists, no additional statements of the seller can be made part of the basis of that bargain. Since the buyer has already agreed to the deal, he cannot plead that he relied on the additional statement in making his deal." WHITE & SUMMERS, UNIFORM COMMERCIAL CODE 401–02 (3rd ed.1988). However, White & Summers points out one exception. *Id.* Where the post-sale affirmation modifies a pre-existing contract, Comment 7 to UCC § 2–313 permits certain affirmations to become a part of the basis of the bargain. *Id.* ("We find enough vitality and merit in the reliance requirement that we would not find such post-deal representations to be warranties under 2–313 unless they could be proved as modifications under terms of 2–209.").

 Here, there are two reasons the after the sale affirmation cannot become a part of the basis of the bargain. First, it is undisputed that there was not a contract between Baker and Harris; therefore, there was nothing to modify. Second, assuming *arguendo*, that a contract did exist, TEX. BUS. & COM.CODE ANN. § 2.201 (Vernon 1994) require a sale of goods costing more than $500 to be in writing, and TEX. BUS. & COM.CODE ANN. § 2.209 (Vernon 1994) prohibits oral modifications on goods costing more than $500. It is undisputed that the contract was for the sale of goods in excess of $500. Therefore, the alleged conversation between Schmaltz and Adams was insufficient to modify any contract had one existed. Any affirmation that occurred after Sheplers' and Baker's bargain was complete, delivery had occurred, and the forms were about to be used, could not be a "basis of the bargain."

Accordingly, it was error for the trial court to have denied Harris's motion for directed verdict. We sustain Harris's fifth point of error.

### Implied warranty of fitness for a particular purpose

In its third point of error, Harris contends, *inter alia,* that the trial court erred in granting judgment for Baker based upon the ground that an implied warranty of fitness for a particular purpose existed. We agree.

An implied warranty of fitness for a particular purpose arises when a seller, at the time of contracting, has reason to know the following: (1) the particular purpose for which the goods are required; and (2) that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. TEX. BUS. & COM.CODE ANN. § 2.314 (Vernon 1994).

 It is undisputed that Sheplers provided the carton forms to Baker. It is also undisputed that at the time of contracting, Harris and Baker had not had contact. Not until the carton forms had been purchased and delivered to the job site did any contact between Baker and Harris occur.

In its brief, Baker argues that the Restatement permits a post-sale affirmation to modify the previous contract. As discussed under express warranty, the problem with this argument is that it is undisputed that Baker and Harris did not have a contract; there was nothing to modify. Accordingly, Harris could not make an implied warranty for a particular purpose, and the trial court erred in denying Harris's motion for directed verdict. We sustain point of error three. *See Two Rivers Co. v. Curtiss Breeding Serv.,* 624 F.2d 1242, 1252 (5th Cir.1980) (no claim for implied warranty for fitness for a particular purpose where plaintiff's reliance is on intermediary, not manufacturer).

### Negligence

 In its second point of error, Harris contends, *inter alia,* that the trial court erred in granting judgment for Baker based upon negligence, and overruling Harris's motions for directed verdict. The elements of a negligence cause of action, which Baker was required to prove, are: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525

(Tex.1990); *Ball v. SGB Const. Services, Inc.*, 820 S.W.2d 916, 917 (Tex.App.—Houston [1st Dist.] 1991, no writ). The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Phillips*, 801 S.W.2d at 525; *Ball*, 820 S.W.2d at 917. Generally, there is no duty to control the conduct of third persons. *Phillips*, 801 S.W.2d at 525; *Ball*, 820 S.W.2d at 917.

In *Ball*, an almost identical case, this Court held that parties similarly situated owed no duty as a matter of law. An employee of a construction company was injured when he fell from scaffolding that was provided by SGB Construction Services, Inc. (SGB). Ball argued that SGB did not provide the people erecting the scaffolding sufficient directions or warnings.

This Court held that SGB proved it had no duty as a matter of law where it showed: (1) there was no contract between Ball's employer and SGB for work at the job site where the accident occurred, and that Ball's employer was responsible for erecting the scaffolding; (2) that SGB had no responsibility for erecting the scaffolding, and SGB only supplied the materials; (3) that there was no problem with the scaffold equipment, but with how the equipment was erected; (4) SGB did not participate in any decisions on the types or quantities of scaffolding, guardrails, or anything else that was necessary for the job; (5) SGB never failed to provide guardrails that were ordered or requested from it; and (6) SGB had given Ball's employer instructions on the proper erection of the scaffolding. *Ball*, 820 S.W.2d at 917–18.

In this case (1) there was no contract between Baker and Harris for work at the job site where the accident occurred; (2) Harris had no responsibility for assembling the carton forms, and it only supplied the materials; (3) the problem was not with the carton forms, but with how they were assembled; (4) Harris did not participate in any decisions on the types or quantities of carton forms, or anything else that was necessary for the job; (5) Harris never failed to provide sleeves for the carton forms that were ordered or requested from it; and (6) Harris had given Sheplers' employees instructions on how to assemble the carton forms.

It is undisputed that Sheplers had been using Harris carton forms for over 15 years prior to this incident. Leonard Guerrero, a Sheplers supervisor, testified that Sheplers had been installing the sleeves on carton forms since at least 1986. Susan McNeil, who worked at Sheplers in San Antonio, testified that she had used the carton forms since 1980. McNeil stated that all of the San Antonio invoicing and requisitioning had to go through the Houston office. She also stated that Harris recommended the use of a sleeve with forms in excess of 12 inches in width so as to strengthen the form. She also testified that she never sold the forms without a sleeve and was unaware of anyone who did.

Gerald Adams testified that he had personally trained Sheplers' personnel on when they should use a sleeve. Adams also testified that it is Harris's standard policy and procedure to recommend the use of a sleeve on any of their forms in excess of 12 inches in width.

■ We hold as a matter of law that Harris did not owe a duty to Baker. *Ball*, 820 S.W.2d at 917; *see also Wochner v. Johnson*, 875 S.W.2d 470, 475–76 (Tex.App.—Waco 1994, no writ); *Hanselka v. Lummus Crest, Inc.* 800 S.W.2d 665, 668 (Tex.App.—Corpus Christi 1990, no writ). It was error for the trial court to grant judgment on the negligence cause of action. We sustain Harris's second point of error.

Although our ruling is dispositive of the negligence cause of action, we note that the trial court also failed to apply the proper legal standard and hold Baker accountable for its own negligence. This case arose years after the Texas Tort Reform Act.[4] The

4. Before 1987, a plaintiff's negligence could not be used as an affirmative defense in strict products liability suits. *Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91 (Tex.1988). However, in 1987, the Texas Legislature adopted the Texas Tort Reform Act which took effect September 2, 1987. TEX. CIV. PRAC. & REM.CODE ANN. §§ 38.001–33.017. Section 33.012(a) provides that "if the claimant is not barred from recovery under Section 33.001, the court shall reduce the amount of

trial court should have reduced Harris's liability by Baker's negligence. TEX. CIV. PRAC. & REM.CODE ANN. § 33.012(a) (Vernon 1997); *Bradshaw v. Freightliner Corp.*, 937 F.2d 197, 204 (5th Cir.1991). It was error for the trial court to grant judgment on the negligence theory in the amount it did. We sustain Harris's sixth point of error.

### Attorney's Fees

Baker's only theory of recovery of attorney's fees was based upon express warranty. Because this claim was not viable, Baker can not recover its attorney's fees.

 Additionally, attorney's fees should not have been granted on the express warranty claim in the first place. Attorney's fees are only recoverable if they are pursuant to statute or contract. *New Amsterdam Cas. Co. v. Texas Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967).

Baker argues in response that express warranty is merely a function of contract, and that any express warranty claim should fall within the ambit of TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997). Baker cites no authority for this position.

We note that the Texas Supreme Court has held in another context that warranty and contract claims are distinct creatures. *See Southwestern Bell Telephone Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex.1991) (holding that warranty and contract claims were different, as well as the remedies available to each); *see also Conann Constructors, Inc. v. Muller*, 618 S.W.2d 564, 568 (Tex.Civ.App.— Austin 1981, writ ref'd n.r.e.) (no recovery under section 38.001 for implied warranty claims). It is also noteworthy that the Texas Deceptive Trade Practices Act specifically permits recovery of attorney's fees for express and implied warranty claims if brought under that statute. TEX. BUS. & COMM.CODE 17.50(a)(2) & (d) (Vernon Supp.1998). This demonstrates the legislature's intent to disallow attorney's fees for Baker's claim; this provision would be meaningless if one could receive attorney's fees without it. *See, e.g., Hunter v. Fort Worth Capital Corp.*, 620

damages to be recovered by the claimant with respect to a cause of action by a percentage

S.W.2d 547, 551 (Tex.1981) (the legislature is never presumed to do a useless or meaningless act).

We sustain point of error seven.

We reverse the judgment of the trial court, and render judgment that Baker take nothing by way of its suit against Harris.

equal to the claimant's percentage of responsibility."