TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





ON MOTION FOR REHEARING








NO. 03-02-00774-CV






Duane Wilson; Debbie Murphy; Mike Wilson; David Wilson; Mark Wilson;

and Christine Ballenger, Appellants


v.


Thomason Funeral Home, Inc., Appellee







FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY

NO. 6555-C, HONORABLE HOWARD S. WARNER, II, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N


 We grant appellants' motion for rehearing, withdraw our original opinion and
judgment issued June 12, 2003, and substitute the following in its place. Duane Wilson, Debbie
Murphy, Mike Wilson, David Wilson, Mark Wilson, and Christine Ballenger (collectively,
appellants) sued appellee, Thomason Funeral Home, Inc., for allegedly mishandling the body of their
family member, Barbara Wilson. In one issue, appellants contend that the trial court erred in
granting two summary judgments in favor of Thomason because fact issues exist concerning all of
their causes of action. Thomason cross-appeals, arguing in one issue that it is entitled to attorney's
fees and expenses for defending against appellants' claims. For the reasons discussed below, we
affirm in part, reverse in part, and remand the cause to the trial court for further proceedings.


FACTUAL AND PROCEDURAL BACKGROUND

 On September 27, 2000, sixty-two-year-old Barbara Wilson, who was alone at her
home in Wimberley, began feeling dizzy and nauseated while taking a shower. She managed to call
911 and get in bed until an ambulance arrived. When Barbara's husband, Duane Wilson, and
daughter, Debbie Wilson, arrived at the hospital in San Marcos, Barbara was conscious but unable
to communicate because she was wearing an oxygen mask. The doctors ordered an air ambulance
to transport Barbara to Austin but she died soon after the helicopter arrived for her, around 2:00 p.m.

 One of the emergency room doctors told the family that he thought Barbara died of
a blood clot. Because of uncertainty about the cause of death, the family consented to an autopsy. 
The body then was taken to the Travis County medical examiner in Austin. Unknown to the family,
a Hays County justice of the peace authorized an eye bank to remove the corneas for donation. See
Tex. Health & Safety Code Ann. § 693.012 (West 2003). (1)

 On September 28, members of the Wilson family met with Dwayne Thomason of
Thomason Funeral Home to discuss funeral arrangements. Duane Wilson contracted with Thomason
for the preparation of the body, a viewing, a funeral, and then transportation of the body to the
family's hometown in Kansas for another viewing, funeral, and burial. René Ferrer, Thomason's
embalmer, received the body from the medical examiner's office that same day. He noted on his
case report that the approximate time between death and embalming was twenty-five hours. He also
noted the condition of the body upon arrival: there were autopsy incisions in the chest and head; the
corneas had been removed; the lips were severely wrinkled and slightly protruding; and there were
discolorations on the fingertips and lower back. In the course of the embalming and preparation, he
swabbed out the cornea residue, placed powdered sealant in the eye sockets to prevent leaking, and
rebuilt the eye contour with cotton and plastic eye caps. He also cleaned the fingertips and nails and
closed the mouth with sutures.

 On September 29, Dwayne Thomason checked Ferrer's preparation of the body for
the viewing. Although he did not know what Barbara Wilson looked like before she died, he felt that
her eyes "didn't look natural" and "looked kind of bugged." To correct the problem, he took out the
eye caps and replaced the cotton. Later in the day, several family members came to the funeral
home. Ferrer greeted them and explained that "due to the procedure," one eye might appear
somewhat swollen, the other somewhat sunken, and that it might get better. Upon seeing the body,
family members talked about "how it did not look like Barbara." One daughter, Debbie Murphy,
noticed something red under the fingernails of her mother's right hand, which she thought was blood
because of a visible IV hole in the hand. Debbie also thought her mother's mouth looked rigid and
protruding, her eyes "seemed odd," her makeup was "way too heavy," and her hair was not fixed
correctly. At Debbie's request, one of her brothers, Mike Wilson, asked a Thomason representative
to clean the fingernails. When Debbie saw the body later that day at the viewing, she thought that
the hand looked cleaner but the IV hole was "still very apparent."

 After the funeral on September 30 in Wimberley, Thomason made arrangements for
the body to be transported to Kansas. Bart Stewart of Stewart Funeral Home in Wamego, Kansas
received the body on October 1. Debbie, who had arrived in Kansas the previous day, took her
mother's jewelry to the funeral home. In the parking lot, she met Stewart, who told her that her
mother's eyes had been removed and that the tissue around the eyes had swollen to ten times the
normal size. Debbie began crying and left.

 Stewart asked his funeral director, Thomas Ziph, to come in that day to make some
repairs to the body because it was not in an acceptable condition for a viewing. Upon seeing the
body, Ziph observed that there were embalming fluid burns on the face, the eyes had been removed,
the eye sockets were not treated properly before embalming, the right eye was sunken and the left
protruding, both hands were dirty with dried blood and other soil, and the makeup was too heavy and
caked in the hairline. At the viewing that night, Debbie thought her mother still "did not look like
herself" but her appearance was improved. Her makeup and hair were better, her mouth was softer,
and the IV hole in her hand was covered. The second funeral and burial were held the next day.

 Soon after the family returned to Texas, Debbie stopped payment on the check to
Thomason. She also learned from the Hays County justice of the peace about the authorization for
the removal of the corneas. Dwayne Thomason called Duane Wilson to find out why he stopped
payment on the check. Wilson responded that he had some concerns about the quality of service. 
He then told Thomason to direct any questions to his attorney.

 In December 2000, Thomason sued Duane Wilson for breach of contract. Wilson
filed a countersuit, alleging negligence, negligent infliction of emotional distress, gross negligence,
breach of contract, breach of express warranty, and deceptive trade practices act (DTPA) violations. 
Wilson's children later intervened, joining in their father's causes of action and asserting individual
claims for mental anguish. After the parties conducted discovery, Thomason filed a motion for
summary judgment, stating that there was no evidence as to all of appellants' claims and that it had
established its affirmative defenses and breach-of-contract claim as a matter of law. Appellants filed
an amended petition, adding claims for fraud and unconscionability. The trial court granted the
summary judgment. Thomason filed a second motion for summary judgment as to appellants' fraud
and unconscionability claims, which the trial court also granted. Appellants appeal from these
summary judgments.


STANDARD OF REVIEW

 In one issue, appellants contend that the trial court erred in granting the summary
judgments because fact issues exist concerning all of their causes of action. Thomason moved for
summary judgment on both no-evidence and traditional grounds. It asserted that there was no
evidence concerning certain elements of each of appellants' claims. It further asserted, on traditional
summary judgment grounds, that it was entitled to summary judgment because it had established its
affirmative defenses as a matter of law. Because the trial court's orders do not specify the ground
or grounds relied on for its rulings, we must review each argument asserted in the motions and affirm
the trial court's judgments if any of these arguments is meritorious. See Star-Telegram, Inc. v. Doe,
915 S.W.2d 471, 473 (Tex. 1995). We review the trial court's decision to grant summary judgment
de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). Because Thomason moved
for summary judgment on both no-evidence and traditional summary judgment grounds, we will
discuss the specific standards of review for both.


No-Evidence Summary Judgment

 A party seeking a no-evidence summary judgment must assert that no evidence exists
as to one or more of the essential elements of the nonmovant's claims on which it would have the
burden of proof at trial. Holmstrom v. Lee, 26 S.W.3d 526, 530 (Tex. App.--Austin 2000, no pet.). 
Once the movant specifies the elements on which there is no evidence, the burden shifts to the
nonmovant to raise a fact issue on the challenged elements. Tex. R. Civ. P. 166a(i). The nonmovant
is not required to marshal its proof, (2) but it must point out evidence that raises a fact issue. Id. 166a(i)
cmt. To raise a genuine issue of material fact, the nonmovant must set forth more than a scintilla
of probative evidence as to an essential element of the nonmovant's claim on which the nonmovant
would have the burden of proof at trial. See id. 166a(i); Merrell Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would enable
reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence
exists. Havner, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so
weak as to do no more than create a mere surmise or suspicion" of fact, and the legal effect is that
there is no evidence. Jackson v. Fiesta Mart, 979 S.W.2d 68, 70 (Tex. App.--Austin 1998, no pet.)
(quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). If the nonmovant fails to
present evidence raising a genuine issue of material fact as to the challenged element, the trial court
must grant the motion. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a
directed verdict granted before trial, to which we apply a legal sufficiency standard of review. 
Jackson, 979 S.W.2d at 70.


Traditional Summary Judgment

 The standards for review of a traditional summary judgment are well established. The
movant must demonstrate that there is no genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law on the issues expressly set out in the motion. Tex.
R. Civ. P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary
judgment, the court must take evidence favorable to the nonmovant as true; and the court must
indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the
nonmovant's favor. See Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995); Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant moving for summary judgment on
an affirmative defense must conclusively establish each element of the affirmative defense to prevail. 
See Friendswood Dev. Co. v. McDade + Co., 926 S.W.2d 280, 282 (Tex. 1996).


ANALYSIS

 Because appellants relied heavily on the deposition testimony of their expert witness,
Thomas Ziph of Stewart Funeral Home, in their attempts to defeat summary judgment, we will first
discuss Thomason's assertion that "it is clear that [the trial court] found and ruled that Ziph's
testimony would not be admissible as evidence" to support appellants' counterclaims. Appellants
counter that Thomason failed to preserve this issue for appeal because it did not obtain a ruling on
its objection. Thomason repeatedly argued in its motions for summary judgment and replies to
appellants' responses that Ziph was not qualified as an expert witness, primarily because he was not
familiar with Texas standards of care for funeral homes. At a hearing, the transcript of which neither
party provided to this Court, the trial judge ordered that Ziph be deposed a second time to determine
his qualifications. In his second deposition, Ziph opined that, based on telephone discussions with
an embalmer and a funeral home director in Texas, Thomason's handling of Barbara Wilson's body
constituted negligence and a breach of contract under Texas standards.

 The general rule is that a party asserting an objection to evidence must obtain a ruling
on that objection to preserve error. Tex. R. App. P. 33.1(a)(2). An implicit overruling of a request,
however, can preserve error. Id. 33.1(a)(2)(A). The granting of the motion for summary judgment
does not necessarily implicitly overrule motions or objections. See Allen ex rel. B.A. v. Albin, 97
S.W.3d 655, 661-63 (Tex. App.--Waco 2002, no pet.); Trusty v. Strayhorn, 87 S.W.3d 756, 759-63
(Tex. App.--Texarkana 2002, no pet.); Wrenn v. G.A.T.X. Logistics, Inc., 73 S.W.3d 489, 498 (Tex.
App.--Fort Worth 2002, no pet.); Jones v. Ray Ins. Agency, 59 S.W.3d 739, 752-53 (Tex.
App.--Corpus Christi 2001, no pet.); Rogers v. Continental Airlines, 41 S.W.3d 196, 200 (Tex.
App.--Houston [14th Dist.] 2001, no pet.); Well Solutions, Inc. v. Stafford, 32 S.W.3d 313, 316
(Tex. App.--San Antonio 2000, no pet.); Dolcefino v. Randolph, 19 S.W.3d 906, 926-27 (Tex.
App.--Houston [14th Dist.] 2000, pet. denied). But see Frazier v. Yu, 987 S.W.2d 607, 610 (Tex.
App.--Fort Worth 1999, pet. denied) (finding implied ruling because trial court stated in order
granting summary judgment that it had reviewed the "competent" summary judgment proof).

 Here, as a basis for granting both summary judgments, the trial court stated in its
orders that it had "considered all the pleadings, discovery and summary judgment evidence on file
herein." The orders are devoid of any reference to Ziph's deposition testimony. Thomason's
counsel asserted at oral argument that the trial court ruled on its objection at the summary judgment
hearing, but a record of that hearing is not before us and therefore we may not consider it. (3) See
Brown v. Torey, 22 Tex. 54 (1858); see also Sabine Offshore Serv., Inc. v. City of Port Arthur, 595
S.W.2d 840, 841 (Tex. 1979). We find nothing in the record demonstrating that the trial court
explicitly or implicitly sustained Thomason's objection. The orders granting summary judgment,
to the contrary, state that the trial court considered "all pleadings, discovery and summary judgment
evidence," which would necessarily include Ziph's deposition testimony. (Emphasis added.) 
Therefore, finding no explicit or implicit ruling on Thomason's objection to Ziph's expert testimony,
Tex. R. App. P. 33.1(a)(2)(A), we hold that Thomason has not preserved this issue for our review. 
We now turn to appellants' issue.


Breach-of-Contract Claim and Counterclaim

 Because this case is primarily a dispute over expectation of services rendered in a
contract, we will begin by addressing the propriety of summary judgment as to appellants' breach-of-contract counterclaim. Appellants contend that there is some evidence to show that Thomason
breached its funeral services contract with Duane Wilson. By seeking summary judgment "on the
basis that there is no evidence that Thomason Funeral Home breached its contract," Thomason
placed the burden on appellants to come forward with some evidence on the challenged elements of
its breach-of-contract counterclaim. The elements of a breach-of-contract claim are: (1) the
existence of a valid contract; (2) performance or tendered performance by the claimant; (3) breach
of the contract by the opposing party; and (4) damages to the claimant resulting from that breach. 
National W. Life Ins. Co. v. Rowe, 86 S.W.3d 285, 297 (Tex. App.--Austin 2002, pet. filed). We
construe Thomason's statement that it "fully and reasonably performed all its duties and satisfied any
and all of its obligations owed to the Wilsons under the contract" to mean that it challenged the
breach element of appellants' counterclaim.

 Appellants assert that Thomason had a duty to perform its services in a good and
workmanlike manner and that a material fact issue exists whether Thomason breached this standard. 
At oral argument, Thomason agreed on the standard but argued that there was no issue of material
fact. Upon reviewing the record, we agree with appellants that a fact issue exists whether Thomason
breached its duty of good and workmanlike performance.

 When she saw her mother's body for the first time at Thomason Funeral Home,
Debbie thought that her mother's eyes looked odd, her mouth was rigid and protruding, her makeup
was too heavy, her hair was not fixed the way her mother liked it, there was blood under the
fingernails of her right hand, and there was an IV hole in her right hand. Debbie's brother, Mike,
told someone with Thomason to clean the fingernails. At the viewing that evening, Debbie noted
that it appeared that someone had tried to clean the right hand, but that it was not completely cleaned,
and that the IV hole was still visible. Both Debbie and Duane Wilson testified that Barbara Wilson
did not "look like herself."

 Thomas Ziph, appellants' expert witness, saw the body two days later at Stewart
Funeral Home in Kansas, after Bart Stewart asked him to prepare the body because it was not
acceptable for a viewing. Ziph noted that the lips were puckered and wavy, the eyes were unequal
in size, the makeup was heavy, and both hands were dirty with dried blood or other soil. His
opinion, based on his training and experience in funeral service since 1971 and telephone discussions
with a funeral director and an embalming director about standards of care in Texas, was that the
condition of the body constituted a breach of contract under Texas standards.

 Thomason does not dispute that there was a substance on at least one of the hands. 
Thomason's embalmer, in fact, noted on his case report that he cleaned discolorations on the
fingertips and nails of both hands with grease remover and a nail file. Duane Thomason testified that
"once stained after death, it's very difficult to get the staining out of the tissue." Thomason
contends, however, that the substance was not blood but red ink used to take fingerprints during the
autopsy. Appellants rebutted this assertion with an affidavit from the medical examiner, who averred
that Barbara Wilson's fingerprints were taken with black ink.

 The differing evidence about whether Thomason properly cleaned the fingers and
prepared the body is precisely the kind of evidence that creates a fact question. At oral argument,
even Thomason's counsel characterized the dispute about the hand as a "spitting match between the
parties." We hold that appellants presented some evidence to create a material fact issue whether
Thomason breached its duty of good and workmanlike performance.

 Thomason additionally asserted in its first motion for summary judgment that the
court should "consider this motion in favor of Thomason on all claims." We interpret this to mean
that Thomason sought judgment as a matter of law on its breach-of-contract claim. To prevail as
plaintiff, Thomason had the burden to conclusively establish that no issue of material fact exists on
every element of its claim. Nixon, 690 S.W.2d at 548-49. Because we hold that an issue of material
fact exists whether Thomason breached its duty of good and workmanlike performance, we find that
Thomason failed to meet the burden of conclusively establishing its breach-of-contract claim as a
matter of law. We reverse the trial court's summary judgment orders (i) rendering judgment as a
matter of law in favor of Thomason's breach-of-contract claim and (ii) dismissing appellants'
breach-of-contract counterclaim. Accordingly, we remand Thomason's breach-of-contract claim and
appellants' breach-of-contract counterclaim to the trial court for further proceedings in accordance
with this opinion.


Negligence and Gross Negligence Counterclaims

 Appellants further contend that an issue of material fact exists concerning their
negligence and gross negligence counterclaims. Thomason sought summary judgment on the basis
that "there is no evidence that this party breached any duty of ordinary care" in the preparation and
care of the body, placing the burden on appellants to come forward with some evidence of the breach
element of its negligence counterclaim. (4) Tex. R. Civ. P. 166a(i); Holmstrom, 26 S.W.3d at 530. 
Thomason did not, however, challenge any of the elements of appellants' gross negligence
counterclaim.

 The elements of a common-law negligence claim include legal duty, breach of the
duty, and damages proximately caused by the breach. See Greater Houston Transp. Co. v. Phillips,
801 S.W.2d 523, 525 (Tex. 1990). Here, appellants brought counterclaims for negligent mishandling
of a corpse and negligent infliction of emotional distress arising from the negligent mishandling. 
Although there is no general duty to avoid inflicting mental anguish, a claimant may recover mental
anguish damages in certain circumstances when a defendant breaches some other legal duty. Boyles
v. Kerr, 855 S.W.2d 593, 597 (Tex. 1993) (op. on reh'g) (citing Pat H. Foley & Co. v. Wyatt, 442
S.W.2d 904, 906-07 (Tex. Civ. App.--Houston [14th Dist.] 1969, writ ref'd n.r.e.) (because of
contractual relationship, mental anguish damages allowed for mother when funeral home negligently
mishandled son's corpse)).

 The same evidence creating a fact issue on appellants' breach-of-contract
counterclaim also creates a fact issue on the breach element of appellants' negligence counterclaim.
Both Debbie Wilson and Duane Wilson testified that the eyes did not look normal before the viewing
on Friday. Debbie further testified that an IV hole was visible in the right hand at the viewing later
in the day. Appellants' expert, Thomas Zipf, testified by deposition that Thomason breached the
Texas standard of care for preparing a body. Evidence of this breach, according to Ziph, included
improper closure of the mouth, restoration of the eyes, and cleaning of the hands. Thomason points
to evidence demonstrating that the condition of the body was because of the autopsy, not any alleged
mishandling on its part. This merely adds to the differing evidence about whether Thomason
properly cleaned the fingers and prepared the body, which all creates a fact question as to whether
Thomason breached a duty of ordinary care.

 Therefore, we reverse the district court's summary judgment orders dismissing
appellants' negligence counterclaim and remand this counterclaim to the district court for further
proceedings in accordance with this opinion. Because Thomason did not challenge any element of
appellants' gross negligence counterclaim in its motions for summary judgment, we also remand this
counterclaim to the district court for further proceedings in accordance with this opinion.

Breach of Express Warranty, DTPA, and Fraud Counterclaims

 Appellants further assert that they have presented some evidence to support their
counterclaims for DTPA violations, breach of express warranty, and fraud. These claims arise from
the alleged statement by René Ferrer, Thomason's embalmer, to family members that "due to the
procedure," one eye might appear somewhat swollen, the other somewhat sunken, and that it might
get better. Ferrer allegedly made this statement the day after Duane Wilson entered into the funeral
service contract with Thomason. Appellants asserted that Thomason, by making these statements,
violated DTPA laundry list sections (b)(7)--misrepresenting the quality of its services--and
(b)(24)--failing to disclose information about services if the failure to disclose was intended to
induce the consumer into a transaction the consumer would not have assented to had the information
been disclosed. See Tex. Bus. & Com. Code Ann. §§ 17.46(b)(7), (24) (West 2002). Appellants
also brought counterclaims for common-law fraud and breach of express warranty.

 Thomason challenged the element of reliance, which is common to all of these claims. 
See id. § 17.50(a)(1)(B) (reliance in DTPA claim); Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675,
686 (Tex. 2002) (reliance in common-law breach of express warranty claim, to a certain extent);
Insurance Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex. 1998) (reliance in fraud claim); see
also Harris Packaging Corp. v. Baker Concrete Constr. Co., 982 S.W.2d 62, 66-67 (Tex.
App.--Houston [1st Dist.] 1998, pet. denied) (in breach of warranty claim, reliance not presumed
if representation made after bargain). If appellants did not come forward with some probative
evidence of reliance, then summary judgment on these claims was proper.

 For proof of reliance, appellants point solely to the affidavit of Duane Wilson, which
reads in part:


I was present when my wife's body was first made available for viewing by the
family. A representative from Thomason Funeral Home told us that, because of the
procedure, they had trouble with my wife's eyes. Because Thomason led me to
believe that they had done all they could do for my wife's eyes, I did not complain. 
I paid for the services provided by Thomason Funeral Home because it was my
understanding based on Thomason Funeral Home representative's implication to me
that they had done the best job they could given the procedure. Had I been told either
that my wife's eyes had been completely removed, or that Thomason had breached
any standard of care with respect to preparing my wife's body for burial, I never
would have gone through with the contract.



Appellants have adduced no competent proof that they relied on a misrepresentation by Thomason. 
An affidavit must set forth such facts as would be admissible at a conventional trial on the merits,
see Tex. R. Civ. P. 166a(f) ("affidavits . . . shall set forth such facts as would be admissible in
evidence"), and must be direct, unequivocal, and controvertible. Brownlee v. Brownlee, 665 S.W.2d
111, 112 (Tex. 1984). Here, the only representation, as set forth in the affidavit, is that an unnamed
Thomason representative had difficulty with the eyes "because of the procedure." The affidavit
implies that a Thomason representative said that he did all that he could, but does not unequivocally
aver that anyone with Thomason made the statement. This does "no more than create a mere surmise
or suspicion" of fact, which is less than a scintilla of evidence. Jackson, 979 S.W.2d at 70 (quoting
Kindred, 650 S.W.2d at 63). Notably, Wilson's deposition testimony undermines his affidavit. He
testified that the Thomason representative told him "there's an indent under her eye" that "may come
out and . . . may not come out." When questioned about what else the Thomason representative said,
Wilson replied, "That was it." The allegations concerning statements of an unidentified
representative of Thomason are insufficient to create a fact issue because they lack the necessary
factual specificity and create no more than a suspicion of fact.

 Furthermore, the statement, "Because Thomason led me to believe that they had done
all they could do for my wife's eyes, I did not complain," is no more than a conclusory subjective
belief. Affidavits consisting only of conclusions are insufficient to raise an issue of fact. See Ryland
Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996) (stating that "conclusory affidavits are not
enough to raise fact issues"); Brownlee, 665 S.W.2d at 112. Affidavits may not be based on
subjective beliefs. See Texas Div.-Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex. 1994)
(citing Brownlee, 665 S.W.2d at 112); Hittner & Liberato, supra, at 44. The statement setting forth
a standard for Thomason's conduct, that Wilson would not have gone through with the contract had
Thomason told him that the eyes had been removed or had Thomason said that he breached the
standard of care, lacks probative force because it is a legal conclusion. Brownlee, 665 S.W.2d at
112.

 Because the affidavit lacks sufficient factual specificity about Thomason's
representations, creates no more than "a mere surmise or suspicion of fact," and makes conclusory
statements about reliance that have no probative force, appellants have not presented more than a
scintilla of evidence on the reliance element of their DTPA, fraud, and breach of express warranty
counterclaims. See Jackson, 979 S.W.2d at 70. We therefore affirm the summary judgment orders
to the extent that they dismiss appellants' DTPA, fraud, and breach of express warranty
counterclaims.


Unconscionability Counterclaim

 Appellants further assert that they have presented some evidence to support their
unconscionability counterclaim. An unconscionable action or course of action is "an act or practice
that, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or
capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5)(A)
(West 2002). "Gross," as used in this section, means "glaringly noticeable, flagrant, complete and
unmitigated." Bradford v. Vento, 48 S.W.3d 749, 760 (Tex. 2001) (quoting Morris, 981 S.W.2d at
677, and Chastain v. Koonce, 700 S.W.2d 579, 583 (Tex. 1985)). "[N]ot every misrepresentation
of fact, even an intentional one, constitutes unconscionable conduct." Latham v. Castillo, 972
S.W.2d 66, 72 (Tex. 1998). The test is whether the consumer was taken advantage of to a grossly
unfair degree. Id.

 In their response to Thomason's second motion for summary judgment, appellants
stated the following as the sole support for their unconscionability counterclaim:


Thomason's breaching the standard of care by mopping out Mrs. Wilson's remaining
eye tissue, failing to disclose that the corneas were missing after Thomason knew that
the family's expectation was that their mother's remains would remain intact, and
then representing to the family that the autopsy was the reason for such a poor result
were all acts that took advantage of the Wilsons' lack of knowledge, ability,
experience, or capacity to a grossly unfair degree.



This fails to adduce competent summary judgment proof. Appellants base their unconscionability
claim on the legal conclusion that Thomason breached a standard of care. Legal conclusions have
no probative force as summary judgment evidence. Brownlee, 665 S.W.2d at 112. We therefore
affirm the summary judgment orders to the extent that they dismiss appellants' unconscionability
counterclaim.


Thomason's Request for Attorney's Fees and Expenses

 In its brief, Thomason stated in the table of contents, statement of the case, and issues
presented sections that it was entitled to recover reasonable attorney's fees and expenses, which the
trial court declined to award. Thomason cites no authority or record reference for this proposition. 
A "brief must contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record." Tex. R. App. P. 38.1(h). Having presented nothing for
our review, Thomason has waived this argument.


CONCLUSION

 Because appellants presented some evidence to create a material fact issue whether
Thomason breached its duty of good and workmanlike performance, we hold that the trial court
improperly granted summary judgment as to Thomason's breach-of-contract claim and appellants'
breach-of-contract counterclaim. We further hold that summary judgment was improper on
appellants' negligence and gross negligence counterclaims because appellants presented some
evidence of the element of breach in its negligence counterclaim and because Thomason failed to
challenge appellants' gross negligence counterclaim in its motions for summary judgment. Summary
judgment was proper as to appellants' counterclaims for DTPA violations, breach of express
warranty, fraud, and unconscionability. We need not address Thomason's request for attorney's fees
and expenses because Thomason waived this argument.

 Accordingly, we affirm the trial court's orders granting summary judgment in part,
reversing the grant of summary judgment as to Thomason's breach-of-contract claim, appellants'
breach-of-contract counterclaim, appellants' negligence counterclaim, and appellants' gross
negligence counterclaim. We remand the cause to the trial court for further proceedings in
accordance with this opinion.



 __________________________________________

 Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed in Part; Reversed and Remanded in Part

Filed: July 24, 2003

1. Section 693.012 of the health and safety code states as follows:


Removal of Corneal Tissue Permitted Under Certain Circumstances


On a request from an authorized official of an eye bank for corneal tissue, a justice of the
peace or medical examiner may permit the removal of corneal tissue if:


 

 the decedent from whom the tissue is to be removed died under circumstances
requiring an inquest by the justice of the peace or medical examiner;




 
 no objection by a person listed in Section 693.013 is known by the justice of the
peace or medical examiner; and


 



 
 the removal of the corneal tissue will not interfere with the subsequent course of
an investigation or autopsy or alter the decedent's postmortem facial appearance.

 


Tex. Health & Safety Code Ann. § 693.012 (West 2003).
2. To "marshal one's evidence" means to arrange all of the evidence in the order that it will
be presented at trial. In re Mohawk Rubber Co., 982 S.W.2d 494, 498 (Tex. App.--Texarkana 1998,
orig. proceeding).
3. Correspondingly, we may not consider documents in Thomason's appendix to its brief that
were not part of the appellate record. See, e.g., Deutsch v. Hoover, Box & Slovacek, L.P., 97 S.W.3d
179, 198 (Tex. App.--Houston [14th Dist.] 2002, no pet.). Appellants urge that some of the
documents in appellee's appendix also were not before the trial court. In reviewing a trial court's
summary judgment decision, we "may consider only the evidence that is on file before the trial court
at the time of the hearing or with permission of the court, is filed after the hearing but before
judgment." Judge David Hittner & Lynne Liberato, Summary Judgments in Texas, 54 Baylor L. Rev.
1, 82 (2002).
4. On rehearing, Thomason argues that it also challenged the damages element of appellants'
negligence counterclaim. To the contrary, Thomason specifically challenged only the breach element
of the negligence counterclaim in its original motion. It did raise a no-evidence challenge to
damages in its reply to appellants' response to the motion for summary judgment, but that is not
sufficient. Thomason must have raised the challenge to the damages element in its original motion. 
Callaghan Ranch, Ltd. v. Killam, 53 S.W.3d 1, 4 (Tex. App.--San Antonio 2000, pet. denied)
(because motion for summary judgment stands or falls on grounds stated in motion, challenge in
reply alone not sufficient).