NUMBER 13-02-00577-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

 

JCW ELECTRONICS, INC.,                                                              Appellant,

 

                                                             v.

 

PEARL IRIZ GARZA, INDIVIDUALLY AND

ON BEHALF OF THE ESTATE OF ROLANDO

DOMINGO MONTEZ, DECEASED, AND

BELINDA LEIGH CAMACHO, INDIVIDUALLY

AND AS NEXT FRIEND OF ROLANDO

KADRIC MONTEZ, A MINOR CHILD,                                              Appellees.

 

On appeal from the 107th District
Court of Cameron County, Texas.

 

                               O P I N I O N

 

      Before Chief Justice Valdez and Justices Hinojosa and
Castillo

                                      Opinion
by Justice Hinojosa

 








Appellant, JCW Electronics, Inc. (AJCW@), appeals from the trial court=s judgment in a personal injury suit.  After the suicide death of Rolando Domingo
Montez while in custody in the Port Isabel City Jail, appellees, Pearl Iriz
Garza,[1]
individually and on behalf of the Estate of Rolando Domingo Montez, Deceased,
and Belinda Leigh Camacho,[2]
individually and as next friend of Rolando Kadric Montez, a minor child, filed
suit against JCW, alleging negligence, breach of express and implied
warranties, strict liability, and misrepresentation.  The case was tried to a jury, which found in
favor of appellees on questions of negligence, misrepresentation, and breach of
implied warranty of fitness.  The jury
found damages for Garza and the minor child, but found no damages for Camacho
in her individual capacity.

After the jury verdict, appellees filed a
motion for judgment notwithstanding the verdict, asking the trial court to
disregard certain inconsistent jury answers and render judgment against JCW for
breach of contract and fraud.  The trial
court granted the motion and rendered judgment as requested by appellees.  The trial court also rendered judgment for
the damages found by the jury and awarded appellees their attorneys= fees, guardian ad litem fees, and
costs.  This appeal ensued.  JCW challenges the trial court=s judgment by eight issues; appellees raise
one cross-issue.  We modify the judgment,
and as modified, affirm.

                                                   A.  Factual
Background








In early 1998, JCW and the City of Port
Isabel executed a contract under which JCW was to provide telephone service for
the Port Isabel City Jail.  In accordance
with the contract, JCW installed a coinless
telephone inside each jail cell
so inmates could make collect calls.  On
the night of November 14, 1999, nineteen-year-old Rolando Domingo Montez (AMontez@) was arrested on a misdemeanor charge of
public intoxication and placed in Cell No. 1 of the Port Isabel City Jail.  The following day Montez made three telephone
calls to Garza from inside his jail cell, requesting that she post bail.  Montez and Garza were subsequently informed
that Montez would be released on his own recognizance at 5:00 p.m. on November
16, 1999.  At 4:45 p.m. on the day of his
intended release, Garza arrived at the city jail to pick up Montez.  At
5:30 p.m., while Garza was
waiting in the lobby, Montez was found dead, hanging from the cord of the
telephone that JCW had installed in Cell No. 1.

                                                    B.  Breach
of Contract

In its first and second issues, JCW asserts
that a cause of action for breach of contract was not pleaded, not submitted to
the jury, and not tried by consent. 
Therefore, JCW argues, the trial
court erred in rendering a judgment for appellees for breach of contract.

                                                       1.  Sufficiency of Pleading








The purpose of pleadings is Ato give the adverse parties [fair] notice of each
party=s claims and defenses, as well as notice of the
relief sought.@  Woolam v.
Tussing, 54 S.W.3d 442, 447 (Tex. App.BCorpus Christi 2001, no pet.) (citing Perez v.
Briercroft Serv. Co., 809 S.W.2d 216, 218 (Tex. 1991)); see Tex. R. Civ. P. 47(a).  A pleading should Aconsist of a statement in plain and concise language
of the plaintiff=s cause of action or the defendant=s grounds of defense.@  Tex.
R. Civ. P. 45(b).  Pleadings are
construed liberally in favor of the pleader. 
Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 186 (Tex.
1977).  AThe
court will look to the pleader's intendment@ and
uphold the pleading as to a cause of action even if some element of that cause
of action has not been specifically alleged. 
Gulf, C. & S.F. Ry. Co. v. Bliss, 368 S.W.2d 594, 599 (Tex.
1963); see also Boyles v. Kerr, 855 S.W.2d 593, 601 (Tex. 1993) (op. on
reh=g).  AEvery fact will be supplied that can reasonably be
inferred from what is specifically stated.@  Bliss,
368 S.W.2d at 599.  AMere formalities, minor defects and technical
insufficiencies@ will not invalidate a petition as to a cause of
action so long as the pleading gives fair notice to the opposing party.  Stoner v. Thompson, 578 S.W.2d 679,
683 (Tex. 1979).  Nonetheless, Apleadings must give reasonable notice of the claims
asserted.@  Smithkline
Beecham Corp. v. Doe, 903 S.W.2d 347, 354 (Tex. 1995).








Appellees assert that their pleadings for breach of
warranty concurrently pleaded a cause of action for breach of contract and that
JCW=s failure to file special exceptions to those
pleadings has waived any complaint. 
However, the Texas Supreme Court has determined that breach of contract and
breach of warranty are not the same cause of action.  Southwestern Bell Tel. Co. v. FDP Corp.,
811 S.W.2d 572, 576 (Tex. 1991); Roy v. Howard‑Glendale Funeral Home,
820 S.W.2d 844, 846-48 (Tex. App.BHouston [1st Dist.] 1991, writ denied).  For
example, while a breach of contract action is available to a buyer when the
seller fails to make delivery, a breach of warranty action is available to a
buyer who has finally accepted goods but discovered that they are defective in
some manner.  Southwestern Bell Tel.
Co., 811 S.W.2d at 576; see Ellis v. Precision Engine Rebuilders, Inc.,
68 S.W.3d 894, 896-97 (Tex. App.BHouston [1st Dist.] 2002, no pet.).  In addition, the remedies available under
each cause of action differ.  See
Southwestern Bell Tel. Co., 811 S.W.2d at 576; compare Tex. Bus. & Com. Code Ann. ' 2.711 (Vernon 1994) (remedies available
under UCC breach of contract claim), with id. ' 2.714 (remedies available under UCC breach
of warranty claim).

While pleadings must be construed as
favorably as possible to the pleader, the inference that a cause of action has
been pleaded must be reasonable in light of what is specifically stated in the
pleading.  See Boyles, 855 S.W.2d
at 601.  It is true that where a
plaintiff=s petition omits an element of a cause of
action or fails to state it with sufficient clarity, a defendant must
specifically except to the pleading or he has waived his complaint.  Tex.
R. Civ. P. 90; Aquila Southwest Pipeline, Inc. v. Harmony
Exploration, Inc., 48 S.W.3d 225, 233 (Tex. App.BSan Antonio 2001, pet. denied).  However, where a plaintiff pleads none of the
elements of a viable cause of action, the defendant is not required to file
special exceptions which would suggest to the plaintiff possible causes of
action against the defendant.  Crabtree
v. Ray Richey & Co., 682 S.W.2d 727, 728 (Tex. App.BFort Worth 1985, no writ).

Because breach of contract and breach of
warranty are separate and distinct causes of action, we reject the assertion
that the pleading and submission of one constitutes the pleading and submission
of the other.  Causes of action for
breach of contract and breach of warranty must be pleaded and submitted separately.  We
find nothing in the pleadings that would indicate to JCW that appellees had an
intention to pursue a separate cause of action for breach of contract.  Because no element of a cause of action for
breach of contract was present, JCW was not obligated to file special
exceptions.  JCW=s first issue as it relates to breach of contract is
sustained.

                                    2.  Submission to the Jury and Trial by
Consent








In further support of the trial court=s judgment for breach of contract, appellees
maintain that the jury questions related to the breach of warranty issue
sufficiently equated to elements of a breach of contract cause of action so it
was tried by consent.  See Tex. R. Civ. P. 67 (AWhen issues not raised by the pleadings are tried by express or implied consent of the
parties, they shall be treated in all respects as if they had been raised in
the pleadings.@).

Generally, where a complete and independent
ground of recovery consists of multiple issues, and the jury charge omits issues which constitute only a part of that
ground while other issues necessarily referable to that ground are submitted
and answered, the omitted elements are deemed found in support of the judgment
if no objection is made and they are supported by some evidence.  Tex.
R. Civ. P. 279;  Ramos v. Frito‑Lay,
Inc., 784 S.W.2d 667, 668 (Tex 1990). 
However, where no element of a ground of recovery is submitted or
requested, and the entire theory is omitted from the charge, that ground of
recovery is waived.  Tex. R. Civ. P. 279; Ramos, 784
S.W.2d at 668; Choi v. McKenzie, 975 S.W.2d 740, 744 (Tex. App.BCorpus Christi 1998, pet. denied).  In addition, where an entire theory is
omitted from the charge, appellants have no duty to object to the omission of
an issue, nor does a trial court have authority to deem findings or make
findings of fact pursuant to rule 279.  Choi, 975 S.W.2d at 744 (citing Martin v. McKee Realtors, Inc., 663 S.W.2d 446, 448 (Tex.
1984)).








AThe rule of trial by consent is limited to
those exceptional cases where the parties clearly tried an unpleaded issue by
consent.@  Libhart
v. Copeland, 949 S.W.2d 783, 797 (Tex. App.BWaco 1997, no writ.) (citing White v.
Sullins, 917 S.W.2d 158, 160 (Tex. App.BBeaumont 1996, writ denied)).  Submission to the jury is an essential part
of the trial of an issue.  Harkey v.
Tex. Employers' Ins. Ass'n, 208 S.W.2d 919, 922 (Tex. 1948).  Where
evidence relevant to an unpleaded issue may have been submitted without
objection, an objection to the submission of a jury question on that issue on
any tenable ground prevents the implication that the issue was tried by consent.  See Harkey, 208 S.W.2d at 923; Marine
Creek Partners v. Caldwell, 926 S.W.2d 793, 796 (Tex. App.BFort Worth 1996, no writ); Morton v. Humber,
399 S.W.2d 831, 832 (Tex. Civ. App.BEastland 1966, no writ).  We conclude that failure to request or submit
any element of that cause of action to the jury prevents any implication that the issue was tried by
consent.

Appellees did not request jury questions
specific to breach of contract.  For the
reasons discussed in Part B.1, supra, we determine that questions
submitted regarding breach of warranty are not equivalent to the submission of
questions regarding breach of contract. 
Because no element of breach of contract was submitted to the jury,
appellees have waived any claim for that cause of action.  JCW=s second issue as it relates to breach of
contract is sustained.

                                                                    C.  Fraud

In its first and second issues, JCW also
asserts that a cause of action for fraud was not pleaded, not submitted to the
jury, and not tried by consent. 
Therefore, JCW argues, the trial court erred in rendering a judgment for
appellees for fraud.

In its fourth issue, JCW asserts that
whether or not appellees successfully pleaded fraud, they are nonetheless
barred from recovering any damages under the Texas Proportionate Responsibility
Statute.  We agree.








Proportionate responsibility under Chapter
33 of the civil practice and remedies code provides that Aa claimant may not recover damages if his percentage
of responsibility is greater than 50 percent.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 33.001 (Vernon Supp. 2004-05).  Chapter 33 applies to Aany cause of action based on tort in which a
defendant, settling person, or responsible third party is found responsible for
a percentage of the harm for which relief is sought.@  Id. ' 33.002(a)(1). 
Because fraud is a claim based on tort, Chapter 33  applies.[3]  See JHC Ventures, L.P. v. Fast Trucking,
94 S.W.3d 762, 773 (Tex. App.BSan Antonio 2002, no pet.) (AAs fraud is clearly a claim based on tort,
the Texas Proportionate Responsibility Statute applies to [the] fraud claim.@).

The jury found that sixty percent of the
responsibility for the death of Rolando Montez was attributable to him.  Neither party challenges this finding.  Therefore,
assuming, without deciding, that appellees successfully pleaded fraud as a
cause of action, because it is a claim based in tort subject to Chapter 33, appellees are barred from recovering damages
based on their fraud claim.  JCW=s fourth issue is sustained.

In view of our disposition of JCW=s fourth issue, it is not necessary to
address JCW=s first and second issues as they relate to
fraud.  See Tex. R. App. P. 47.1.

                                 D.  Failure
to Submit Affirmative Defense

In its fifth issue, JCW contends that it
established the affirmative defense of suicide as a matter of law.  However,
JCW fails to provide any citations to the record in support of this
argument.  Because we find this argument
is inadequately briefed, see Tex.
R. App. P. 38.1(h), we consider it waived.








Also as part of its fifth issue, JCW asserts, in the
alternative, that the trial court erred by failing to submit to the jury its
tendered question on the affirmative defense of suicide, thus entitling it to a
new trial.  A trial court has
considerable discretion when fashioning a jury charge.  DeLeon v. Pickens, 933 S.W.2d 286, 290
(Tex. App.BCorpus Christi 1996, writ denied).  The decision to submit or refuse a particular
instruction is subject to an abuse of discretion standard of review.  In re V.L.K., 24 S.W.3d 338, 341 (Tex.
2000).  Error occurs only when the trial court acts without reference to any
guiding principles.  Fluor Daniel,
Inc. v. Boyd, 941 S.W.2d 292, 295 (Tex. App.BCorpus Christi 1996, writ denied).  However, even where error may have occurred,
rule 44.1(a) of the Texas Rules of Appellate Procedure requires that no
judgment be reversed on appeal due to an error of the trial court unless that
error probably led to the rendition of an improper judgment.  Tex.
R. App. P. 44.1(a).

JCW asserts that it was entitled to a
question on the affirmative defense of suicide under section 93.001(a)(2) of
the Texas Civil Practice and Remedies Code because Montez=s suicide was the sole cause of the damages
sustained.[4]  See Tex. Civ. Prac. & Rem. Code Ann. ' 93.001(a)(2) (Vernon 2005).  JCW tendered two questions on this issue: (1)
did Rolando Domingo Montez commit suicide; and (2) was Rolando Domingo Montez=s suicide the sole cause of the damages sustained,
if any.  The trial court denied both
questions tendered by JCW.  Instead, the
court submitted the following two questions of comparative responsibility
regarding Montez=s death:








Question
No. 1. 

 

Did
the negligence, if any, of those named below proximately cause the death of
Rolando Domingo Montez in question?  

 

Answer
AYes@ or ANo@ for each of the following:

 

a.         JCW Electronics

b.         The City of Port Isabel

c.         Quadrum Telecommunications, Inc.

d.         Rolando Montez

 

Question
No. 2.

 

What
percentage of the negligence that caused the death of Rolando Montez do you
find to be attributable to each of those found by you, in your answer to
Question No. 1?

 

a.         JCW Electronics

b.         The City of Port Isabel

c.         Quadrum Telecommunications, Inc.

d.         Rolando Montez

 

 The
questions actually submitted by the trial court presented the jury with the
possibility that Montez may have been fully responsible for his own death.  We conclude that the substance of the
affirmative defense sought by JCW was submitted to the jury and note that A[a] judgment shall not be reversed because
of the failure to submit other and various phases or different shades of the
same question.@  Tex. R. Civ. P. 278.  Submission of the additional questions would
have been only another shade of the same issue. 
We hold the trial court=s refusal to submit JCW=s tendered questions did not lead to the
rendition of an improper judgment, and therefore was not reversible error.  We overrule that part of JCW=s fifth issue that is not waived.

 E.  Breach of Implied Warranty of Fitness for a
Particular Purpose








In one cross-issue, appellees urge that
regardless of the validity of the causes of action for breach of contract and
fraud, we should nonetheless affirm the judgment based on the jury=s finding that JCW breached the implied
warranty of fitness for a particular purpose. 
In opposition to appellees= cross-issue, JCW raises several arguments.

                                                                     1.  Waiver

Initially, JCW argues that appellees have
waived their cross-issue because (1) the judgment submitted by appellees and
signed by the trial court specifically states that A[p]laintiffs= causes of action either pleaded or tried by
implication other than the breach of contract and fraud are hereby dismissed,@ and (2) appellees failed to complain to the
trial court that the judgment dismissed the other claims.

Typically when a jury returns favorable
findings on two or more alternative theories, the prevailing party need not
formally waive the alternative findings, but may seek recovery under an
alternative theory if the judgment is reversed on appeal.  Boyce Iron Works, Inc. v. Southwestern
Bell Tel. Co., 747 S.W.2d 785, 787 (Tex. 1988); Norwest Mortgage, Inc.
v. Salinas, 999 S.W.2d 846, 865 (Tex. App.BCorpus Christi 1999, pet. denied).  In such a situation, the successful party had
no reason to complain to the trial court until the judgment was overturned on
appeal, and thus it is not necessary
for the error to have been first brought to the trial court=s attention.  Boyce
Iron Works, Inc., 747 S.W.2d at 787. 
Therefore, it was not
necessary for appellees to have complained about their recovery based on breach
of contract and fraud unless or until such theories were overturned on appeal.








JCW, however, asserts that this is not a
case where appellees are simply seeking recovery under an alternative
theory.  JCW argues that by filing a
motion for judgment notwithstanding the verdict, appellees asked the court to
enter a specific judgment and cannot now attack that very judgment.  See Casu v. Marathon Ref. Co., 896
S.W.2d 388, 390 (Tex. App.BHouston [1st Dist.] 1995, writ denied) (op.
on reh=g.); D/FW Commercial Roofing Co. v. Mehra,
854 S.W.2d 182, 190 (Tex. App.BDallas 1993, no writ) (AA party who induces the court to render a certain
judgment cannot later complain of that judgment.@).

The general rule is that when a party files a motion
for entry of judgment, that party cannot take a position on appeal that is
inconsistent with that part of the judgment. 
See Litton Indus. Prod., Inc. v. Gammage, 668 S.W.2d 319,
321-22 (Tex. 1984) (citing Miner-Dederick Constr. Corp. v. Mid-County Rental
Serv., Inc., 603 S.W.2d 193 (Tex. 1980)). 
When applying this rule, the focus is on whether the position taken by
the party on appeal is inconsistent with the judgment requested of the trial
court.  See Litton, 668 S.W.2d at
322 (AWe disapprove a practice by which a party, by
motion, induces the trial court . . . to render a judgment, but reserves in a
brief the right for the movant to attack the judgment if the court grants the
motion.  Litton could not have it both
ways.@).








The position taken by appellees here is not
inconsistent with the judgment they requested of the trial court.  In their motion,[5]
appellees relied on the jury=s finding of breach of implied warranty as part of
their argument for judgment based on breach of contract.  Appellees here rely on that same finding on breach of implied warranty
as an alternate theory of recovery. 
Moreover, while the AAmended Final Judgment@ signed by the trial court based recovery on
breach of contract and fraud, it also incorporated the jury=s finding on breach of implied warranty by
rendering judgment that Athe special verdict of the jury in favor of
[appellees] in that JCW=s breach of implied warranty of fitness for
a particular purpose or breach of contract proximately caused the death of
Rolando Domingo Montez.@

Because appellees= position as to the jury=s finding of breach of implied warranty of
fitness for a particular purpose remains consistent, and such special verdict
was incorporated into the judgment, we conclude that appellees have preserved
their right to recover under this alternative theory.[6]  See Boyce Iron Works, 747 S.W.2d at
787 (ABy incorporating the jury=s findings into the court=s judgment, Boyce did everything it could to
preserve the right of recovery under the alternate theory.@). 
Accordingly, we conclude that appellees have not waived their
cross-issue.

                3.  Sufficiency of the Evidence of Breach of
Implied Warranty of Fitness

In further opposition to appellees= cross-issue, JCW contends (1) the evidence
is legally insufficient to support the jury=s finding that the telephone was to be used
for other than an ordinary purpose, and (2) the evidence is legally and
factually insufficient to support the jury=s finding that a breach of the implied
warranty of fitness was the proximate cause of the injuries sustained.

                                                           a.  Standard of Review








When we review a Ano evidence@ or legal sufficiency of the evidence issue,
we must view the evidence in a light that tends to support the finding of the
disputed fact and disregard all evidence and inferences to the contrary.  Bradford v. Vento, 48 S.W.3d 749, 754
(Tex. 2001).  A no evidence challenge
will be sustained when the record discloses that  (1) there is a complete absence of evidence
of a vital fact, (2) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact, (3) the
evidence offered to prove a vital fact is no more than a mere scintilla, or (4)
the evidence conclusively establishes the opposite of the vital fact.  Merrell Dow Pharms. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997).  If there is
more than a scintilla of evidence to support the finding, the no evidence
challenge fails.  Stafford v. Stafford,
726 S.W.2d 14, 16 (Tex. 1987).  More than
a scintilla of evidence exists where the evidence supporting the finding, as a
whole, rises to a level that would enable reasonable and fair-minded people to
differ in their conclusions.  Havner,
953 S.W.2d at 711.

When we review an "insufficient
evidence" or factual sufficiency of the evidence issue, we consider all of
the evidence which supports or undermines the jury's finding.  Plas‑Tex, Inc. v. U.S. Steel Corp.,
772 S.W.2d 442, 445 (Tex. 1989).  We
review the evidence, keeping in mind that it is the jury's role, not ours, to
judge the credibility of the evidence, assign the weight to be given to
testimony, and resolve inconsistencies within or conflicts among the witnesses'
testimony.  Corpus Christi Area
Teachers Credit Union v. Hernandez, 814 S.W.2d 195, 197 (Tex. App.BSan Antonio 1991, no writ).  We set aside the verdict only when we find
that the evidence standing alone is too weak to support the finding, or that
the finding is so against the overwhelming weight of the evidence that it is
manifestly unjust and clearly wrong.  Ortiz
v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).

                                               b.  Use Other than Ordinary Purpose








JCW asserts the record contains Ano evidence@ showing that the telephone was intended to
be used for other than its ordinary purpose. 
Therefore, there was no implied warranty of fitness for a particular
purpose.  A breach of an implied warranty of fitness for a particular purpose
occurs when a seller, at the time of contracting, has reason to know any
particular purpose for which the goods are required and that the buyer is
relying on the seller's skill or judgment to select or furnish suitable
goods.  Tex.
Bus. & Com. Code Ann. ' 2.315 (Vernon 1994); Chandler v. Gene Messer
Ford, Inc., 81 S.W.3d 493, 503 (Tex. App.BEastland
2002, pet. denied); Lester
v. Logan, 893 S.W.2d 570,
574 (Tex. App.BCorpus Christi 1994, writ denied).  The particular purpose must differ from the
ordinary use.  See, e.g.,
Chandler, 81 S.W.3d at 493, 503 (finding ordinary purpose of vehicle was
transportation and ordinary purpose of air bag was serving as part of the
restraint system); Miles v. Ford Motor Co., 922 S.W.2d 572, 587 (Tex.
App.B Texarkana 1996), rev'd in part on other
grounds, 967 S.W.2d 377 (Tex.1998) (finding
that carrying passengers is the ordinary purpose of passenger truck); Crosbyton
Seed Co. v. Mechura Farms, 875 S.W.2d 353, 365 (Tex. App.BCorpus Christi 1994, no writ) (finding no evidence
that producing commercial cash crop is anything other than ordinary purpose of
seed purchased).  A particular purpose
can also result from a specific use by the buyer which is peculiar to the
nature of his business.  Crosbyton
Seed, 875 S.W.2d at 365 (citing Lanphier Constr. Co. v. Fowco Constr.
Co., 523 S.W.2d 29, 41 (Tex. App.BCorpus Christi 1975, writ ref=d n.r.e.) (finding that use of asphalt for paving
parking lots and entrances at high school was sufficient particular purpose)); Lester, 893 S.W.2d at
574-75 (finding hay was not fit for particular purpose of feeding livestock).

 








Port Isabel Chief of Police Joel Ochoa
testified that during the course of discussions with JCW about potential
telephone services for the jail, Bradley Woods, owner of JCW,  introduced the idea of placing the telephones
inside the jail cells and represented that the phones (1) would not be used as
a means for an inmate to harm himself or anyone else, and (2) would be safe for
unattended use by inmates.  Ochoa further testified that before these
discussions, he had never heard of placing telephones inside jail cells, or of
suicides involving such phones, and that he relied on the information provided
by JCW in deciding to place the phones inside the jail cells.  Ochoa, Port Isabel City Attorney John
Haywood, and city manager Roberto H. Garcia testified that at a meeting on
December 10, 1999, after Montez=s suicide, Woods and JCW general counsel James K.
Mayo acknowledged that prior to placing the telephones in the Port Isabel City
Jail, they were aware of incidents of suicides resulting from use of telephone
cords.  Ochoa testified that if he had
been provided with this information, he would never have allowed JCW to place
the telephones inside the cells.

Woods testified that he had been placing telephones
in jail facilities and public places for eleven years.  At the time of trial, Woods had approximately
200 phones in fifty or sixty jail facilities. 
Woods and Mayo both testified that before the Montez incident they had
no knowledge of jail suicides using telephone cords and made no such
acknowledgments during the December 10 meeting. 
Woods further testified
that he never guaranteed the safety of any inmates, and that while it is his
job to advise clients about the equipment that is available, the client makes
the decision.








Lennie Schrimsher, owner of Quadrum
Telecommunications, the manufacturer of the blue steel housing for the
telephone that was placed in the cell, testified that these telephones were
never intended for unattended use by inmates. 
Although he was aware that the phones were in correctional facilities,
he thought they were only in supervised public areas.  He disagreed that this particular telephone
was safe for unattended use by inmates, and said there are other phones
designed for that purpose.  He also
testified that it was common knowledge in the industry that a telephone or
other object placed in a cell would be a danger to inmates.

After reviewing the entire record, we
conclude it contains more than a scintilla of evidence showing that the
telephones were not safe for the particular purpose of unattended or
unsupervised use by inmates.  Thus, the
evidence is legally sufficient to support the jury=s finding.

                                                             c.  Proximate Cause

JCW further contends the evidence is legally
and factually insufficient to support the jury=s finding that a breach of the implied
warranty of fitness was the proximate cause of the damages sustained.  A party may recover consequential damages
resulting from such a breach for an Ainjury to person or property proximately
resulting from any breach of warranty.@  Tex. Bus. & Com. Code Ann. ' 2.715 (Vernon 1994).








Proximate cause consists of both cause in
fact and foreseeability.  Union Pump Co. v. Allbritton, 898
S.W.2d 773, 775 (Tex. 1995)
(citing Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992)).  Here, JCW challenges only the sufficiency of
the evidence establishing that the breach of implied warranty was the cause in
fact of appellees= injuries. 
Cause in fact requires that the defendant's conduct or product be a
substantial factor in bringing about the injury which would not otherwise have
occurred.  Id.  (citing Prudential Ins. Co. v. Jefferson
Assocs., 896 S.W.2d 156, 161 (Tex. 1995)). 
JCW contends the connection between any breach of implied warranty of
the telephone installed in the jail cell and appellees= injuries is too attenuated to constitute
legal cause because  A[l]egal cause is not established if the defendant=s product . . . does no more than furnish the
condition that makes the plaintiff's injury possible.@  Union
Pump Co., 898 S.W.2d at 776 (citing Lear Siegler Inc. v. Perez, 819
S.W.2d 470, 472 (Tex. 1991)).

We note that in cases where courts have
declined to find proximate cause, the property at issue was only peripherally
related to the damage or served only as a preliminary condition to the sequence
of events leading to the harm.  Doe v.
Boys Club of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995); see Dallas County Mental Health & Mental Retardation
v. Bossley, 968 S.W.2d 339, 343
(Tex. 1998) (finding that unlocked doors permitted escape from hospital but
were not a proximate cause of death when patient committed suicide by jumping
into path of an oncoming truck); Union Pump Co., 898 S.W.2d at 776
(finding that where Allbritton was injured falling off a pipe rack after
extinguishing a pump fire, the pump was not a proximate cause of her
injuries).  In the present case, the
injuries were immediately and directly related to the presence of the telephone
in the jail cell.  See Overton Mem=l Hosp. v. McGuire, 518 S.W.2d 528, 529 (Tex. 1975) (finding that injuries were
proximately caused by the absence of rails on the side of a bed).  Because there is an immediate causal nexus
between the presence of the telephone in the jail cell and appellees= injuries, we conclude that the evidence is legally
and factually sufficient to establish cause in fact.  Accordingly, we hold the evidence is legally
and factually sufficient to support the jury=s finding that the breach of implied
warranty of fitness was the proximate cause of appellees= injuries.








                                            5.  Proportionate Responsibility Statute

JCW asserts that appellees= case sounded in tort because it was based
on personal injuries.  Thus, JCW argues,
recovery is barred by chapter 33 of the Texas Civil Practice and Remedies Code because the jury found that Montez was more than
fifty percent responsible for his death. 
See Tex. Civ. Prac. &
Rem. Code Ann. '' 33.001-33.002 (Vernon Supp. 2004-05).

Chapter 33 applies to Aany
cause of action based on tort@ or any action brought under the Deceptive Trade
PracticesBConsumer Protection Act (DTPA) Ain which a defendant, settling person, or
responsible third party is found responsible for a percentage of the harm for
which relief is sought.@ Id. ' 33.002(a). 
Chapter 33 specifically excludes from coverage actions to collect
workers= compensation benefits, claims for exemplary
damages, or actions arising from the manufacture of methamphetamine.  See id. '
33.002(c).  However, AChapter 33 does not explicitly address its
applicability in UCC [Uniform Commercial Code] cases.@  Southwest
Bank v. Info. Support Concepts, Inc., 149 S.W.3d 104, 107 (Tex. 2004).








While traditionally it has been true that Awhen considering a common law remedy . . .
an implied warranty arising from sales sounds in tort and not in contract,@ the
UCC provides a statutory remedy for personal injuries suffered as a result of a
breach of an implied warranty.  Garcia
v. Tex. Instruments, Inc., 610 S.W.2d 456, 463 (Tex. 1980).  Because Athe traditional distinctions between tort and
contract are not relevant,@ the supreme court has determined that, whether or
not a claim would be considered a tort for common law purposes, decisions based
on the common law are not determinative in cases under the UCC dealing with
statutory remedies.  Id.; see
JHC Ventures, 94 S.W.3d at 772-73.  We must, therefore, look beyond
the common law to determine whether chapter 33 should be applied to breach of
implied warranty claims under the UCC.

In making that determination, we must bear
in mind the purpose and effect of both statutes so that the application of one
does not undermine the effect and purpose of the other.  See Southwest Bank, 149 S.W.3d at 110.
 One of the primary purposes and policies
underlying the adoption of the UCC was Ato make uniform the law among various jurisdictions.@  Tex. Bus. & Com. Code Ann. ' 1.103(a)(3) (Vernon Supp. 2004-05).  The UCC was adopted Aas a comprehensive and integrated act to
facilitate the continued expansion of commercial practices.@  Garcia,
610 S.W.2d at 461.  To achieve that end,
Article 2 of the UCC Asupplies a complete framework of rights and
remedies for transacting parties.@  Id.  Given
the UCC=s purpose as a Acarefully integrated@
permanent uniform codification covering an entire field of law, Awe must be careful not to interpret any
statute that does not explicitly amend or modify the UCC as doing so impliedly.@  Southwest
Bank, 149 S.W.3d at 110-11.








The supreme court has determined that under
Article 2 of the UCC, consideration should be given to the fault or negligence
of the buyer in determining recovery of consequential damages for a breach of
an implied warranty.  Signal Oil &
Gas Co. v. Universal Oil Products, 572 S.W.2d 320, 328 (Tex. 1978).  Although the
buyer=s conduct may affect his recovery of consequential
damages, the UCC does not state that negligence or fault on the part of a buyer
totally bars recovery.  Id.  AThe fact that the buyer=s negligence is a proximate cause of the damages
does not negate the fact that a part of the damages was still a result of the
breach of warranty or unsuitability of the product.@  Id.  In so holding, the Supreme Court of Texas
declined to apply the modified comparative negligence statute in effect at the
time[7]
to UCC breach of implied warranty claims, instead noting that under the UCC,
the buyer was Aentitled to recover that portion of the damages
caused by the unsuitable product, even if the buyer=s negligence or fault constitute[d] a greater cause
of the damages than the seller=s breach.@  Id. at 328-29.

Therefore, given the nature of UCC article 2
as a complete, integrated legal framework governing sales of products, and the
supreme court=s refusal to apply comparative liability
statutes to UCC article 2, we conclude that any extension of chapter 33's proportionate responsibility scheme to
UCC article 2 could potentially disrupt and override Athe UCC=s express purpose of furthering uniformity among the
states.@  Southwest
Bank, 149 S.W.3d at 110-11.  Accordingly, we decline to extend chapter 33
to appellees= breach of implied warranty claim.  Appellees= cross-issue is sustained.

                                                           F.  Attorney
Fees








In its sixth issue, JCW asserts the trial
court erred in awarding attorney=s fees to appellees.  Breach of contract and breach of warranty are
separate and distinct claims, and the damages available to each differ.  Southwestern Bell Tel. Co., 811 S.W.2d
at 576; compare Tex. Bus. &
Com. Code Ann. ' 2.711 (Vernon 1994) with id. ' 2.714.  Attorney=s fees are generally recoverable for a successful
action on breach of contract.  See Tex. Civ. Prac. & Rem. Code Ann. ' 38.001(8) (Vernon 1997).  However, because breach of contract is not a
valid basis for the trial court=s judgment, the award of attorney=s fees is not proper on that ground, and Texas
courts have consistently held that a party cannot recover attorney=s fees under a UCC breach of warranty claim.  Ellis v. Precision Engine Rebuilders, Inc.,
68 S.W.3d 894, 897 (Tex. App.BHouston [1st Dist.] 2002, no pet.); JHC Ventures,
L.P., 94 S.W.3d at 769; Harris Packaging Corp. v. Baker Concrete Constr.,
982 S.W.2d 62, 69 (Tex. App.BHouston [1st Dist.] 1998, pet. denied).  The trial court therefore erred in awarding
attorney=s fees to appellees. 
JCW=s sixth issue is sustained.

                                                                    G.  Costs

In its eighth issue, JCW asserts the trial court
erred in its award of costs.  The trial
court awarded appellees guardian ad litem fees in the amount of $25,000 to be
taxed as costs, and also awarded appellees Acosts.
. . in the amount set forth in [appellees=] Bill of Costs.@  The 
appellees= Bill of Costs charged costs for copying fees,
expert witness travel and per diem expenses, court reporter fees, filing fees,
and fees of service, for a total amount of $19,555.25.








The assessment of costs is within the trial court=s discretion and will be reversed on appeal only if
the trial court abused its discretion.  Allen
v. Crabtree, 936 S.W.2d 6, 7 (Tex. App.BTexarkana
1996, no writ).  A trial court abuses its
discretion when it acts arbitrarily, unreasonably, or without any reference to
any guiding principles.@  Id.
(citing Yowell v. Piper Aircraft Corp., 703 S.W.2d 630, 635 (Tex.
1986)).  Under rule 131 of the Texas
Rules of Civil Procedure, a Asuccessful party to a suit shall recover . . . all
costs incurred therein, except where otherwise provided.@  Tex. R. Civ. P. 131.  In addition, under rule 141, a trial court may, Afor good cause, to be stated on the record,
adjudge the costs otherwise than as provided by law or these rules.@  Tex. R. Civ. P. 141.  However, Athe power to tax costs for good cause shown,
does not include the power to tax, as costs, items which are not normally
allowed.@  Whitley
v. King, 581 S.W.2d 541, 545 (Tex. Civ. App.BFort Worth 1979, no writ).

The civil practice and remedies code
provides that in awarding costs a court may include Afees of the clerk and services fees due the
county,@ and Afees of the court reporter for the original
of stenographic transcripts necessarily obtained for use in the suit.@  Tex. Civ. Prac. & Rem. Code Ann. ' 31.007(b)(1)-(2) (Vernon 1997).  Therefore, costs awarded in the amounts of
$178.00 and $937.88 for filing fees and fees of service, respectively, are
appropriate, as are fees of the court reporter in the amount of $13,199.15.  See id.  In addition, under rule 173.6, guardian ad
litem fees in the amount of $25,000 were properly taxed as costs of court.  Tex.
R. Civ. P. 173.6(c) (AThe court may tax a guardian ad litem=s compensation as costs of court.@).

Appellees= Bill of Costs shows charges of $3,175.47
for A[e]xpert witness travel and per diem
expenses, excluding compensation for preparation and testifying.@ 
However, Aregardless of any good cause shown, costs of experts
are incidental expenses in preparation for trial and not recoverable.@  Richards
v. Mena, 907 S.W.2d 566, 571 (Tex. App.BCorpus
Christi 1995, writ dism=d) (citing Whitley, 581 S.W.2d
at 544).  We conclude it was an abuse of
discretion for the trial court to award costs for expert witness travel and per
diem expenses.








The Bill of Costs also shows charges of
$2,064.75 for Aphotocopying document [sic] necessary for
the successful prosecution of this matter.@  Rule
140 provides that Ano fee for a copy of a paper not required by
law or these rules to be copied shall be taxed in the bill of costs.@  Tex. R. Civ. P. 140.  Documents that appellees consider necessary
for prosecution of a case do not equate with documents required by law.  Because there was no showing that the
photocopies were required by law, it was also an abuse of discretion for the
trial court to tax these costs against JCW.

JCW=s eighth issue is sustained in part.  The trial court=s award of costs is modified to eliminate
the costs taxed against JCW for expert witness travel and per diem expenses,
and photocopies not required by law.

In view of our disposition of these issues,
it is not necessary to address JCW=s remaining issues.  See Tex.
R. App. P. 47.1.

We reverse the trial court=s (1) award of attorneys= fees, (2) award of costs in the amount of
$3,175.47 for expert witness travel and per diem expenses, and (3) award of
costs in the amount of $2,064.75 for photocopying.  We modify the judgment of the trial court to
reflect that it is being rendered in favor of appellees for their breach of
implied warranty of fitness for a particular purpose cause of action.  We also modify the judgment of the trial
court to reflect the award of costs in the proper amount of $14,315.03.  As modified, the judgment of the trial court
is affirmed.

 

FEDERICO G. HINOJOSA

Justice

 

 

Opinion delivered and filed this

the 13th day of October, 2005.

 











[1]
Pearl Iriz Garza is
Rolando Domingo Montez=s mother.





[2]
Belinda Leigh Camacho
is Rolando Domingo Montez=s girlfriend and the mother
of his minor son, Rolando Kadric Montez.





[3] Although appellees assert that
Chapter 33 does not apply to fraud because it is an intentional tort, the 1995
amendments to the statute specifically removed the exception for intentional
torts.  See Act of May 18, 1995,
74th Leg., R.S., ch. 136, ' 1, sec. 33.002, 1995 Tex. Gen. Laws 971 (Vernon) (current
version at Tex. Civ. Prac. & Rem.
Code Ann. ' 33.001 (Vernon Supp.
2004-05)).  





[4]
Section 93.001(a)(2)
provides that A[i]t is an affirmative
defense to a civil action for damages for personal injury or death that the
plaintiff, at the time the cause of action arose, was . . . committing or
attempting to commit suicide, and the plaintiff's conduct in committing . . .
suicide was the sole cause of the damages sustained; provided, however, if the
suicide or attempted suicide was caused in whole or in part by a failure on the
part of any defendant to comply with an applicable legal standard, then such
suicide or attempted suicide shall not be a defense.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 93.001(a)(2) (Vernon 2005).





[5]
In their motion for
judgment notwithstanding the verdict, appellees opposed entry of judgment on
the special issues contained in jury questions five, six, and seven, in which
the jury failed to find product and marketing defects, and question twelve, in
which the jury failed to find a common-law marriage between Montez and
Camacho.  Appellees further requested the
trial court to make an implied finding that the deceased was a third-party
beneficiary of the contract between JCW and the City of Port Isabel, based in
part on the affirmative jury finding to question nine on breach of implied
warranty of fitness for a particular purpose. 
Finally, appellees asked the trial court to render judgment in their
favor on the jury=s special verdict as to
breach of contract and fraud for the purpose of beginning the appellate
timetable, while reserving the right to file a motion for new trial and to
appeal from any adverse findings in the jury=s special verdict.





[6]
 We express no opinion regarding whether
appellees have preserved the right to recover under any other alternative
theories. 





[7]  See Act of
April 9, 1973, 63rd Leg., R.S., ch. 28, 1973 Tex. Gen. Laws 41, repealed by
Act of June 16, 1985, 69th Leg., R.S., ch. 959 ' 1, 1985 Tex. Gen. Laws 3270
(current version at Tex. Civ. Prac.
& Rem. Code Ann. ' 33.001 et. seq. (Vernon Supp. 2004-05)).